# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> UPHEALTH HOLDINGS, INC., *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Lead Case No. 23-11476 |
| GLOCAL HEALTHCARE SYSTEMS PRIVATE LIMITED, DR. SYED SABAHAT AZIM, MS. RICHA SANA AZIM, MR. GAUTAM CHOWDHURY, *and* KIMBERLITE SOCIAL INFRA PRIVATE LIMITED <br>     Plaintiffs, <br><br> v. <br><br> UPHEALTH HOLDINGS, INC., UPHEALTH, INC., MOSHE BAR-SIMAN-TOV, RAMESH BALAKRISHNAN, MARTIN BECK, RALUCA DINU, GIL FROSTIG, AVI KATZ, CHIRINJEEV KATHURIA, NATHAN LOCKE, JOHN MIKULSKY, NEIL MIOTTO, MARIYA PYLYPIV, AGNES REY-GIRAUD, JEROME RINGO, *and* BRAD WEIGHTMAN, <br><br>     Defendants. | Adversary Proceeding No. 24-50092-LSS |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATHAN LOCKE'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

---

[1] The debtors ("Debtors") in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: UpHealth Holdings, Inc. (6328); Thrasys, Inc. (7413); Comprehensive Care Alliance LLC (6965); Behavioral Health Services LLC (8110); BHS Pharmacy LLC (2475); Psych Care Consultants LLC (8822); and Reimbursement Solutions LLC (6388). Debtors' headquarters and the mailing address is 14000 S. Military Trail, Suite 202, Delray Beach, Florida 33484.

Date: January 13, 2025                          Brian R. Lemon (ID #4730)
                                                **AKERMAN LLP**
                                                222 Delaware Avenue, Suite 1710
                                                Wilmington, DE 19801
                                                Telephone: (302) 596-9200
                                                Email: brian.lemon@akerman.com

                                                *Counsel for Defendant Nathan Locke*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT .......................................................................................................................2

I.     Plaintiffs Concede That Locke Does Not Owe Fiduciary Duties To Plaintiffs ...................2

II.    Plaintiffs Failed To Demonstrate That Their Breach Of Fiduciary Duty Cause Of Action Is Not Duplicative Of Their Breach Of Contract Cause Of Action ...................3

III.   The Complaint Does Not Contain Allegations That Locke Breached a Fiduciary Duty ..................................................................................................................4

IV.   The Business Judgment Rule Applies And Under Delaware Law Dismissal is Warranted .....................................................................................................................5

V.    Plaintiffs Engaged In Improper Group Pleading ..................................................6

VI.   Plaintiffs' Unjust Enrichment Claim Against Locke Fails ....................................8

VII.  Plaintiffs Cannot Toll the Statute of Limitations ................................................10

       A.    The Equitable Tolling Doctrine Does Not Apply ..................................10

       B.    Neither the Inherently Unknowable Nor Fraudulent Concealment Doctrines Toll the Statute of Limitations As To Locke ........................12

CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Artoss, Inc. v. Artoss GmbH*,
  2021 WL 706345 (D. Del. Feb. 23, 2021), *report and recommendation adopted*,
  2021 WL 2138544 (D. Del. Mar. 11, 2021) ..................................................................4

*ECB USA, Inc. v. Savencia, S.A.*,
  2020 WL 11762200 (D. Del. July 10, 2020) ...............................................................12

*In re Essar Steel Minnesota, LLC*,
  602 B.R. 600 (Bankr. D. Del. 2019) ..............................................................................2

*In re Furniture Factory Ultimate Holding, L.P.*,
  2023 WL 5662747 (Bankr. D. Del. Aug. 31, 2023) ...................................................7, 8

*Grudkowski v. Foremost Ins. Co.*,
  556 Fed. Appx. 165 (3d Cir. 2014) ................................................................................9

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ..............................................................................3

**State Cases**

*BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*,
  2004 WL 1739522 (Del. Ch. Aug. 3, 2004) ..................................................................4

*Bamford v. Penfold, L.P.*,
  2020 WL 967942 (Del. Ch. Feb. 28, 2020) ...................................................................2

*Boulden v. Albiorix, Inc.*,
  2013 WL 396254 (Del. Ch. Jan. 31, 2013) ....................................................................2

*In re Dean Witter P'ship Litig.*,
  1998 WL 442456 (Del. Ch. July 17, 1998) .................................................................12

*Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*,
  318 A.3d 1105 (Del. Ch. 2024) .....................................................................................6

*Litman v. Prudential-Bache Properties, Inc.*,
  1994 WL 30529 (Del. Ch. Jan. 14, 1994) ...................................................................13

*LVI Grp. Investments, LLC v. NCM Grp. Holdings, LLC*,
  2018 WL 1559936 (Del. Ch. Mar. 28, 2018) ................................................................8

*In re Match Grp., Inc. Derivative Litig.*,
 315 A.3d 446 (Del. 2024) ..................................................................................5, 6

*In re McDonald's Corp. Stockholder Derivative Litig.*,
 291 A.3d 652 (Del. Ch. 2023)............................................................................5, 6

*Nemec v. Shrader*,
 991 A.2d 1120 (Del. 2010) ....................................................................................3

*Stein v. Wind Energy Holdings, Inc.*,
 2022 WL 17590862 (Del. Super. Ct. Dec. 13, 2022) ............................................9

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
 906 A.2d 168 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*,
 931 A.2d 438 (Del. 2007) ......................................................................................2

*Vichi v. Koninklijke Philips Elecs. N.V.*,
 62 A.3d 26 (Del. Ch. 2012)....................................................................................9

In response to Plaintiffs'[2] Omnibus Response Brief in Opposition (Adv. D.I. 139) ("Opposition")[3] to Locke's Memorandum of Law in Support of Motion to Dismiss the Second Amended Complaint (Adv. D.I. 102) ("Motion"), Locke respectfully submits this Reply in Support of his Motion.

## PRELIMINARY STATEMENT

Plaintiffs have failed to cure their pleading deficiencies despite amending their complaint numerous times and filing an eighty-page Opposition. The Second Amended Complaint (Adv. D.I. 76) ("SAC") should be dismissed with prejudice. *First*, Plaintiffs do not dispute, and therefore concede, that Locke—as a director of parent company UHI who is not alleged to be a controlling shareholder of UHI—does not owe fiduciary duties to Plaintiffs.

*Second*, Plaintiffs' breach of fiduciary duty claims are duplicative of their breach of contract claims, and thus should be dismissed.

*Third*, Plaintiffs failed to assert allegations against Locke that satisfy the elements of their breach of fiduciary duty claim. Further, Plaintiffs failed to plausibly allege that Locke's actions were grossly negligent, or that he engaged in a self-interested transaction and the transaction was unfair to the company, or that Locke acted in bad faith.

*Fourth*, the business judgment rule applies and Plaintiffs have failed to plead around or rebut it, mandating dismissal.

*Fifth*, Plaintiffs failed to explain away their improper group pleading and the resulting incoherence of their allegations against Locke.

---

[2] Capitalized terms not defined herein shall have the meaning as defined in the Motion to Dismiss (Adv. D.I. 102).

[3] Plaintiffs' Omnibus Response Brief in Opposition (the "Opposition") is cited herein as "Opp. at __." Defendant Nathan Locke's Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint (the "Motion") is cited herein as "Op. Br. at __".

1

*Sixth*, Plaintiffs' unjust enrichment claims against Locke are duplicative of their breach of contract claims and must be dismissed.

*Lastly*, Plaintiffs' claims against Locke are time-barred.

Accordingly, the Court should dismiss the SAC with prejudice.

## ARGUMENT

**I. Plaintiffs Concede That Locke Does Not Owe Fiduciary Duties To Plaintiffs.**

Locke—as a director of parent company **UHI**—does not owe fiduciary duties to UHI's wholly owned subsidiaries (Glocal and UHH), Glocal's individual shareholders, nor to individual shareholders of UHI.  Op. Br. at 10-12.  Plaintiffs failed to address this argument in their Opposition and therefore concede it.  *See Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *5 (Del. Ch. Jan. 31, 2013).  Furthermore, Plaintiffs do not dispute the facts supporting this argument, namely that (1) Locke is a former director of parent company UHI who is not alleged to be a controlling shareholder of UHI, (2) Glocal and UHH are UHI's wholly directly or indirectly owned subsidiaries, (3) certain Plaintiffs are individual shareholders of Glocal, and (4) certain Plaintiffs are individual shareholders of UHI.

Instead, Plaintiffs take the position that whether a duty exists is a question of fact that, by itself, precludes dismissal at the pleading stage, citing *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *8 (Del. Ch. Feb. 28, 2020)[4].  However, *Bamford* does not involve an assertion of a duty owed

---

[4] To the contrary, Courts routinely dismiss on the pleadings claims for breach of fiduciary duty brought against directors of parent companies.  *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (finding "a parent corporation does not owe fiduciary duties to its wholly-owned subsidiaries," and dismissing this type of breach of fiduciary duty claim on a motion to dismiss); *In re Essar Steel Minnesota, LLC*, 602 B.R. 600, 607 (Bankr. D. Del. 2019) (granting motion to dismiss against corporate parent because "[c]ourts have consistently held that parent corporations do not owe fiduciary duties to their wholly-owned subsidiaries").

2

by a director of a parent company to the parent companies' wholly owned subsidiaries, individual shareholders of those subsidiaries, and/or individual shareholders of the parent company, and is thus irrelevant. As a matter of law, Locke does not owe fiduciary duties to the Plaintiffs, and there are no factual disputes to be decided to reach this conclusion.

In essence, Plaintiffs are asking the court to turn a blind eye to corporate formality and find a duty where case law explicitly holds that no such duty exists. Courts cannot do so. *See In re HH Liquidation, LLC*, 590 B.R. 211, 273 (Bankr. D. Del. 2018) ("Delaware law does not blithely ignore corporate formalities and the [plaintiff] has not explained how the [parent's] directors, as opposed to [the parent], can be deemed to be a 'controlling stockholder' group that owes fiduciary duties to a subsidiary."). Plaintiffs' argument that Locke owed fiduciary duties to them is both contrary to well-settled Delaware law and unsupported by the allegations in the SAC, and thus Count I should be dismissed.[5]

## II. Plaintiffs Failed To Demonstrate That Their Breach Of Fiduciary Duty Cause Of Action Is Not Duplicative Of Their Breach Of Contract Cause Of Action.

"It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

---

[5] Plaintiffs argue that Pylypic and Balakrishnan, not Locke, owed a fiduciary duty to Plaintiffs based on a special relationship. Opp. at 40. Thus, Plaintiffs' special-relationship argument does not apply to Locke. Furthermore, although Plaintiffs allege that on May 14, 2021, they became owners of shares of UHH which were later converted to shares of UHI (SAC at ¶ 78), Locke (as a director of UHI) only owed duties to UHI's shareholders as a whole, not to UHI's individual shareholders, i.e., Plaintiffs. Op. Br. at 10-12. Accordingly, there is no basis for any fiduciary duty that Locke owed to Plaintiffs.

3

Plaintiffs contend, mistakenly, that Paragraphs 117-122 of the SAC somehow do not relate to obligations arising from contracts. Opp. at 35-36. However, these allegations clearly relate to, and even expressly reference, obligations under the SPA.[6] Accordingly, both the breach of fiduciary duty and breach of contract claims are rooted in contract. Where "[t]he language of the pleadings shows that the actions underlying [the] breach of contract []claim are the same as the actions underlying [the] breach of fiduciary duty []claim," the court must address those actions under "contract principles," and dismiss the breach of fiduciary duty claim. *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *7 (Del. Ch. Aug. 3, 2004) (internal citations omitted).

Moreover, *Artoss, Inc. v. Artoss GmbH*, 2021 WL 706345 (D. Del. Feb. 23, 2021), *report and recommendation adopted*, 2021 WL 2138544 (D. Del. Mar. 11, 2021), the only case cited by Plaintiffs, is distinguishable. There, the court found that defendant's use of confidential information to negotiate against plaintiff's interests constituted "additional alleged wrongful acts" that "d[id] not arise from [the parties' contract on which plaintiff sued]." *Id.* at *7. Here, all the actions alleged in Paragraphs 117-122 of the SAC relate to a contractual right or obligation under the SPA. Therefore, Plaintiffs' breach of fiduciary duty claim should be dismissed as duplicative of their breach of contract claim.

**III.    The Complaint Does Not Contain Allegations That Locke Breached a Fiduciary Duty.**

Plaintiffs criticize Locke's argument that Plaintiffs have failed to state a claim against Locke for breach of duty of care and loyalty (Op. Br. at 14-16) as "unavailing." Opp. at 41. But

---

[6] SAC ¶ 117 (alleging UHH failed to deliver shares worth $110 million); *id.* ¶ 118 (alleging UHH failed to "honor[] its obligations to Glocal and the other Plaintiffs under the SPA"); *id.* ¶ 119 (alleging UHH failed to provide promised working capital under Amended SPA); *id.* ¶ 120 (alleging UHH failed to make $4 million cash investment into Glocal); *id.*¶ 121 (alleging UHH failed to appoint Dr. Azim as CEO and to the UHI board pursuant to Amended SPA); *id.* ¶ 122 (alleging UHH failed to pay Glocal's transaction costs).

4

Plaintiffs' attempt to shore up their contention against Locke fails because Plaintiffs only argue that they alleged sufficient allegations against Kathuria, who is both a Pre-Merger Director and a Post-Merger Director, and do not cite a single allegation in the Complaint supporting the conclusion that Locke breached any duties.[7] Opp. at 41-44.  Plaintiffs' failure to allege that Locke acted with gross negligence or that he was self-interested warrants dismissal of Count I.

### IV. The Business Judgment Rule Applies And Under Delaware Law Dismissal is Warranted.

Contrary to the case cited by Plaintiffs (Opp. at 38), at the pleading stage, under Delaware law, the Court's analysis of whether Plaintiffs have stated a claim for breach of fiduciary duty against Locke "starts with the default standard of the business judgment rule." *In re McDonald's Corp. Stockholder Derivative Litig.*, 291 A.3d 652, 686 (Del. Ch. 2023).  The Delaware Supreme Court held in 2024 that "[w]hen a stockholder challenges a board's business decision, the plaintiff must rebut the business judgment rule. The plaintiff must plead particularized facts supporting a reasonable inference that the board or its committee lacked a majority of informed, disinterested individuals who acted in good faith when making a decision." *In re Match Grp., Inc. Derivative Litig.*, 315 A.3d 446, 459 (Del. 2024).  At the pleadings stage, Plaintiffs must plead facts supporting an inference that the business judgement rule does not apply, and if Plaintiffs fail to do this, dismissal is warranted.

The business judgment rule "presumes that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Unless a plaintiff rebuts one of the elements of the rule,

---

[7] The SAC alleges in Paragraph 101 that in "early to mid-2021," UHI "pressured" Dr. Azim to relocate to Dubai.  However, because Locke joined the board of UHI in June 2021, this allegation is implausible as to him.  Moreover, the "false assurances" alleged in this paragraph were made by Balakrishnan, Kathuria, Pylypiv and Ramakrishna, not Locke.  SAC at ¶ 101.

5

the court merely looks to see whether the business decision made was rational in the sense of being one logical approach to advancing the corporation's objectives." *McDonald's Corp.* at 685 (internal quotations and citations omitted). "If the business judgment rule applies, then the court will not second guess the fiduciary's decision, and the [breach of fiduciary duty claim] will be dismissed." *Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Materials, Inc.*, 318 A.3d 1105, 1142 (Del. Ch. 2024) (emphasis added); *see also McDonald's Corp.* at 686 ("The question is whether the plaintiffs have alleged facts sufficient to rebut the presumptions of the business judgment rule, thereby creating a pleading stage inference that the Director Defendants will bear the burden of proving that their actions were entirely fair.").

Here, the business judgment rule applies because the gravamen of the SAC consists of challenges to decisions made by the boards of defendant companies. Plaintiffs have failed to plead around or rebut the business judgment rule because they have failed to allege particularized facts supporting a reasonable inference that in making business decisions, e.g., the non-appointment of Dr. Azim and drafting UHI's by-laws, UHI lacked a majority of informed, disinterested individuals who acted in good faith. *In re Match Grp.* at 459. Instead, Plaintiffs merely allege in conclusory fashion that certain decisions were grossly negligent. Therefore, the SAC as to Locke should be dismissed because the actions of board members are protected under the business judgment rule.

## V. Plaintiffs Engaged In Improper Group Pleading.

Plaintiffs argue that "the fact that the Complaint alleges that various UpHealth Directors engaged in the same or similar conduct and, at times, refers to groups of UpHealth Directors by a defined name (*e.g.,* Pre- or Post-Merger Directors), *see e.g.,* [SAC] ¶¶ 116–117, does not transform Plaintiffs' allegations into a 'group pleading.'" Opp. at 33-34. Plaintiffs mischaracterize the grouping they employ. For instance, Paragraph 4 alleges that "UpHealth Parties," (which is the super-group encompassing UHH, UHI and UpHealth Directors) approached Glocal in 2019 and

6

2020. But Locke was not a board member of UHI until June 2021. It is unclear what plausible allegations, if any, are being asserted against Locke. Plainly, Locke could not have possibly have engaged in the "same or similar" conduct as Pre-Merger Directors prior to June 2021 because he was not on the UHI board at that time. The SAC and the Opposition are replete with similar examples of Plaintiffs' grouping leading to implausible allegations or, at a minimum, allegations that deprive Locke of adequate notice of the specific misconduct he is being accused of, and the nature of his purported fiduciary relationship to Plaintiffs.[8]

*In re Furniture Factory Ultimate Holding, L.P.*, 2023 WL 5662747 (Bankr. D. Del. Aug. 31, 2023) is distinguishable. There, the court found that the complaint asserted separate counts of breach of fiduciary duty, each of which was tied to a specific subgroup of directors. *Id.* at *11. The court also found that the complaint "contains sufficient dates, details, and actions or inactions by the D&Os, collectively and individually, and is therefore sufficient to put the D&Os on notice of the specific conduct that gives rise to the breach of fiduciary claims asserted against them." *Id.* (internal citation omitted). Here, Count I of the SAC is tied to all "UpHealth Directors." There is no separate count for each subgroup of directors as there was in the complaint in *Furniture Factory*. Moreover, the grouping in *Furniture Factory*, i.e., subgroups of directors within one group for all directors, is not the grouping Plaintiffs employ in their SAC. Instead, the SAC groups Locke with all UpHealth Directors and further groups him in the subgroup "Post-Merger Directors," but then also groups Locke with two entities, UHH and UHI, as well as with the

---

[8] *See, e.g.,* SAC ¶¶ 44–47, 49, 54, 58, 72, 88, 93, 95–96, 98, 101 (referring to UpHealth Parties, but alleging facts regarding pre-merger negotiations and representations between UpHealth Services (later UHH), GigCapital, and Glocal, Locke's involvement in which is implausible); *id.* at ¶ 116; Opp. at 7, 25, 26 n.21, 28; SAC ¶¶ 118, 125, 185.

"UpHealth Parties." The grouping in the SAC is a far cry from the grouping the *Furniture Factory* court found permissible.

## VI.    Plaintiffs' Unjust Enrichment Claim Against Locke Fails.

Plaintiffs contend that their unjust enrichment claim should be allowed to proceed alongside their breach of contract claims because "the contract arose from wrongdoing" and Defendants are unjustly enriched through the benefits flowing from the contract. Opp. at 71, 74–75. Specifically, Plaintiffs claim that "the SPA arose from Defendants' fraudulent misrepresentations." *Id.* at 75. However, the SPA could not have arisen from any of Locke's alleged wrongdoing because Locke only became a board member of UHI **after** the SPA was entered into. Indeed, in *LVI Grp. Investments, LLC v. NCM Grp. Holdings, LLC*, 2018 WL 1559936 (Del. Ch. Mar. 28, 2018), cited by Plaintiffs, the court held that "because the Complaint adequately alleges that the Contribution Agreement itself arose from the Defendants' fraud, the existence of that contract does not bar the unjust enrichment claim" against those Defendants. *Id.* at *17. Here, Plaintiffs do not (and cannot) plausibly allege that the SPA arose from Locke's fraud. The allegations Plaintiffs put forward to establish that the SPA was the product of wrongdoing all relate to events and representations that took place before Locke became a director of UHI in June 2021, or relate to Defendants other than Locke.[9] Therefore, because the SAC does not (and cannot) plausibly allege that the SPA was the product of any alleged fraud by Locke, Plaintiffs' unjust enrichment claim against Locke cannot proceed.[10]

Plaintiffs further contend that their unjust enrichment claim against Locke should not be dismissed because that claim relates to Locke's alleged fraud, not to the SPA. Opp. at 75. This

---

[9] *See* SAC ¶¶ 68, 75-76, 79-82, 190.

[10] Plaintiffs' allegations relating to the failure to appoint Dr. Azim as CEO, International or to the UHI Board also arise from the SPA and should be dismissed. SAC ¶¶ 92, 158.

8

argument should be rejected because, as discussed above, Plaintiffs failed to plausibly allege any fraud by Locke. Secondly, despite Plaintiffs' attempt to characterize their unjust enrichment claim as based on fraud that is independent of contractual obligations under the SPA, Plaintiffs' unjust enrichment claim is rooted in Plaintiffs' exchange of their ownership interest for UHH (and later UHI) shares. SAC ¶ 207. That exchange occurred pursuant to the SPA. *Id.* ¶ 59 (under the SPA, UHH would acquire 90% of Glocal's share capital in exchange for cash, shares in UHH or its successors and repayment or refinancing of Glocal's debt). Despite their attempts to contort their allegations to appear less like contract claims, it is clear that Plaintiffs are effectively attempting to assert a breach of contract claim against Locke based on an agreement to which he is not a party. This is impermissible. *See Stein v. Wind Energy Holdings, Inc.*, 2022 WL 17590862, at *9 (Del. Super. Ct. Dec. 13, 2022) (internal citation omitted; alteration in original) ("Unjust enrichment claims do not vary the ordinary rules prohibiting contract parties from bringing breach of contract claims against non-contract parties. A contract party cannot use a claim for unjust enrichment to extend the obligations of a contract to [persons] who are not parties to the contract.")

Lastly, Plaintiffs contend that their unjust enrichment claims against Locke should survive because they plead those claims in the alternative. Opp. at 71. However, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 Fed. Appx. 165, 170 n.8 (3d Cir. 2014) (internal citations omitted); *see also Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59 (Del. Ch. 2012) (internal citations omitted) ("[A] party may plead "in the alternative" claims seeking recovery under theories of contract or quasi-contract. This is generally so, however, only when there is doubt surrounding the

enforceability or the existence of the contract."). Here, none of the parties argues that the agreements are invalid. Therefore, alternative pleading is not available to Plaintiffs.

## VII. Plaintiffs Cannot Toll the Statute of Limitations.

Contrary to Plaintiffs' representations, there are several instances in which the SAC includes facts that warrant the application of the statute of limitations. *See e.g.*, SAC ¶¶ 78–79, 115, 219, (alleging Locke wrote UHI's bylaws at the close of the BCA, June 9, 2021, to guarantee that then-appointed UHI Board would remain in control); *id.* ¶ 101 ("In early to mid-2021, the ***UpHealth Parties*** . . . began to pressure Dr. Azim to relocate to Dubai from India." (emphasis added)). Thus, the Court should engage in a statute of limitations analysis, and Claims based on conduct that occurred prior to July 8, 2021 should be dismissed.

In an effort to circumvent this fatal flaw, Plaintiffs argue that the SAC alleges facts that toll their claims relating to transactions preceding July 8, 2021, until at least 2022, pursuant to the three tolling doctrines: (1) equitable tolling; (2) inherently unknowable; and (3) fraudulent concealment. Opp. at 24. Each fails.

### A. The Equitable Tolling Doctrine Does Not Apply.

Plaintiffs cannot rely upon the equitable tolling doctrine to maintain claims preceding July 8, 2021, against Locke for two reasons.

*First*, Locke is not a fiduciary for Plaintiffs. In their Opposition, Plaintiffs assert that a fiduciary relationship exists based only on the special relationship of trust between Plaintiffs and the UpHealth Directors.[11] *See* Opp. at 5, 39–40. Yet Plaintiffs do not assert a fiduciary relationship

---

[11] Notably, the Opposition cites only to allegations specific to ***Pre-Merger Directors*** to demonstrate the claimed existence of a fiduciary relationship as to all ***UpHealth Directors***, providing the Court with another example of the significant issues with Plaintiffs' improper use of group pleading. *See* Opp. at 25 ("Plaintiffs allege that a fiduciary relationship existed between Plaintiffs and the ***UpHealth Directors***. SAC ¶¶ 109–112.").

10

based on trust as to Locke. Instead, the SAC claims Locke owed Plaintiffs a fiduciary duty because he, as a director of UHI, controlled an entity in which Plaintiffs are minority shareholders. *Compare* SAC ¶ 108 ("Following the closing of the SPA and the BCA, the Post-Merger Directors owed Plaintiffs fiduciary duties arising from their control of . . . UHH and, later, UHI.") *with* ¶ 109 ("Prior to the closing of the SPA, the directors and officers of UHH (Balakrishnan, Kathuria, and Pylpiv) owed Plaintiffs fiduciary duties by virtue of the relationship of trust and confident that arouse out of the SPA negotiations . . . ."). Plaintiffs abandoned this position because the Opposition does not address *any* of the arguments challenging the alleged fiduciary relationship on this basis.

*Second*, assuming, *arguendo*, a fiduciary relationship existed between Locke and Plaintiffs (it does not), Plaintiffs do not claim that they lacked inquiry notice of Locke's alleged self-dealing. Instead, Plaintiffs claim the ***UpHealth Directors*** engaged in actionable self-dealing by: (1) deciding to go public; (2) taking overly generous exit packages at the close of the BCA; and (3) obtained unjustified benefits (i.e., allegedly outsized salaries and fees) from their roles as insiders. *See* Opp. at 25–26 n.20 (citing SAC ¶¶ 114–15, 117). This, however, is another example of illogical and inaccurate group pleading, as the first two alleged acts do not apply to Locke—they took place before he was appointed to the UHI Board. *See* SAC ¶ 114 ("[T]he ***Pre-Merger Directors*** put their own interests ahead of other shareholders by going public . . . ." (emphasis added)); *id.* at ¶ 115 n.41 ("At and following the closing of the BCA, certain ***UpHealth Directors*** took overly-generous exit packages . . ." and identifying only certain ***Pre-Merger Directors*** (emphasis added)). And absent from the SAC (or the Opposition) is any claim that relates to Plaintiffs' alleged delay in learning about Locke's supposed receipt of "outsized salaries and fees."

*See* Opp. at 26–27 (citing SAC ¶¶ 11, 70–71, 73, 75, 84, 102, 103, 185, 193, 200).[12] Nor could there be as executive and director compensation for publicly traded companies must be publicly disclosed to the SEC and shareholders. *Cf. In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *8 (Del. Ch. July 17, 1998) (emphasis in original) ("***[B]eneficiaries should not put on blinders to such obvious signals as publicly filed documents, annual and quarterly reports, proxy statements, and SEC filings***. Thus, even where defendant is a fiduciary, a plaintiff is on inquiry notice when the information underlying plaintiff's claim is readily available.").

### B. Neither the Inherently Unknowable Nor Fraudulent Concealment Doctrines Toll the Statute of Limitations As To Locke.

Without citing a single allegation in support, Plaintiffs claim that the statute of limitations should be tolled because they "were [blamelessly ignorant] and unable to discover the UpHealth Directors' various breaches." Opp. at 27. Plaintiffs, however, had inquiry notice of Locke's alleged "outsized salar[y,]" *see supra* Section VII.A, and the other Challenged Transactions to the extent any occurred before July 8, 2021. For example, Plaintiffs allege that the Post-Merger Directors breached their fiduciary duties by writing UHI's bylaws in a manner so that they would maintain control, *see* SAC ¶ 115, but these bylaws were publicly available and readily available to Plaintiffs. Plaintiffs were similarly aware of any nonpayment allegedly ***owed to them*** by UHI. *Id.*

Moreover, the SAC does not allege that Plaintiffs lacked inquiry notice as to the Challenged Transactions. Indeed, to the extent such allegations exist or are implied, they do not relate to Locke's challenged conduct before July 8, 2021. At most, the SAC wrongfully subsumes Locke in allegations referring to "UpHealth Parties" without regard to the relevance and applicability to

---

[12] The Opposition states that "Plaintiffs were not on notice [of] the ***UpHealth Directors'*** various breaches until, at the earliest, sometime in 2022." This is not sufficient to demonstrate the lack of inquiry notice necessary to invoke the equitable tolling doctrine as to Locke. *See ECB USA, Inc. v. Savencia, S.A.*, 2020 WL 11762200 at *17 (D.Del. July 10, 2020).

each of the Defendants subsumed within this collective. *See e.g.*, SAC ¶¶ 5–11, 45–47, 49, 54, 58, 72, 93. For example, it is ***impossible*** for Locke to have misrepresented UHH, its financial condition, or other points of negotiation for the SPA, BCA, or the Lock-Up Agreement as alleged through use of the "UpHealth Parties" collective because he was not involved in ***any*** pre-merger transaction. Thus, these allegations do not (and cannot) toll the statute of limitations for Locke's challenged conduct preceding July 8, 2021.

For these same reasons, Plaintiffs cannot rely on the fraudulent concealment doctrine to pause the statute of limitations. To assert fraudulent concealment, Plaintiffs must plausibly allege that Locke, before July 8, 2021, made certain affirmative misrepresentations or that he had a duty to disclose and failed to do so. *Litman v. Prudential-Bache Properties, Inc.*, 1994 WL 30529, at *4 (Del. Ch. Jan. 14, 1994). The SAC makes no such allegations. As discussed herein, any alleged misrepresentation relating to pre-merger transactions do not apply to Locke. And the SAC specifically ***excludes*** Locke from any alleged "false assurances" regarding Dr. Azim's appointment to UHI CEO, International. *See* SAC ¶ 101 ("UHI . . . thereafter negligently and recklessly began to pressure Dr. Azim to relocate to Dubai from India under the false assurance that he would soon be named as UHI's CEO, International . . . . These false assurances were made by Balakrishnan, Kathuria, Pylypiv, and UHI's representative Mr. Ranjani Ramakrishna on behalf of UHI."). Locke also did not have a duty to advise Plaintiffs of any material fact because Locke was not a fiduciary for Plaintiffs. *See supra* Section I. And even if they were in a fiduciary relationship, the SAC does not allege that Locke failed to disclose any of the Challenged Transactions before July 8, 2021.

## **CONCLUSION**

For the foregoing reasons and those set forth in Locke's opening brief, Locke respectfully requests that this Court dismiss the SAC against him with prejudice.

Date: January 13, 2025                                               **AKERMAN LLP**

*/s/ Brian R. Lemon*
Brian R. Lemon (#4730)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
Telephone: (302) 596-9200
Facsimile: (302) 596-9300
Email: brian.lemon@akerman.com

*Counsel for Defendant Nathan Locke*