## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UPHEALTH HOLDINGS, INC., *et al.*, | Case No. 24-11476 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| GLOCAL HEALTHCARE SYSTEMS PRIVATE LIMITED, DR. SYED SABAHAT AZIM, MS. RICHA SANA AZIM, MR. GAUTAM CHOWDHURY, AND KIMBERLITE SOCIAL INFRA PRIVATE LIMITED, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 24-50092 (LSS) |
| UPHEALTH HOLDINGS, INC., UPHEALTH, INC., MOSHE BAR-SIMAN-TOV, MARTIN BECK, RALUCA DINU, GIL FROSTIG, AVI KATZ, CHIRINJEEV KATHURIA, NATHAN LOCKE, JOHN MIKULSKY, NEIL MIOTTO, MARIYA PYLYPIV, AGNES REY-GIRAUD, JEROME RINGO AND BRAD WEIGHTMAN, | **PLAINTIFFS' OMNIBUS SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS** |
| Defendants. | |

---

[1] The debtors ("Debtors") in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: UpHealth Holdings, Inc. (6328); Thrasys, Inc. (7413); Comprehensive Care Alliance LLC (6965); Behavioral Health Services LLC (8110); BHS Pharmacy LLC (2475); Psych Care Consultants LLC (8822); and Reimbursement Solutions LLC (6388). Debtors' headquarters and the mailing address was 14000 S. Military Trail, Suite 202, Delray Beach, Florida 33484.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT..................................................................................................1

SUPPLEMENTAL BACKGROUND.......................................................................................2

ARGUMENT .............................................................................................................................4

    I.     The Bankruptcy Court Has Subject Matter Jurisdiction Over This Proceeding.............................................................................................................4

    II.    The Liquidating Trustee is Not Estopped From Prosecuting Claims. ...................8

    III.   The Edwards Decision Does Not Support Dismissal Of The Pending Unjust Enrichment Claims....................................................................................11

    IV.   The Court Should Decline to Abstain. ..................................................................13

          A.    The State Law Claims Here Do Not Favor Abstention.............................14

          B.    Creditor Recoveries Are Substantially Tied To The Claims Asserted Here.............................................................................................14

          C.    There Is No "Related Proceeding" Pending In State Court .....................16

          D.    The Subject Matter Jurisdiction Analysis Supports Not Abstaining Here.........................................................................................17

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*1228 Inv. Grp., L.P. v. Hub Grp., Inc.*, 635 F. Supp. 3d 381 (E.D. Pa. 2022)..................................9

*Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004) ..............................................................................................................7

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602 (S.D.N.Y. 2008) ....................................................................................13

*Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500 (S.D.N.Y. 2015) ...................................13

*Edwards v. GigAcquisitions2, LLC,* 2025 WL 2092832 (Del. Ch. July 25, 2025) .....................................................................................2, 11, 12, 13, 15, 16, 17, 18

*In re Abengoa Bioenergy Biomass of Kansas, LLC*, 2018 WL 1321951 (Bankr. D. Kan. Mar. 13, 2018) ..........................................................................................10

*In re AstroPower Liquidating Trust*, 335 B.R. 309 (Bankr. D. Del. 2005) ............................6, 7, 8

*In re Decteroff*, 133 F.3d 210 (3d Cir. 1997) ..............................................................................11

*In re Eight-115 Assocs., LLC*, 650 B.R. 43 (Bankr. S.D.N.Y. 2023) .....................................14, 16

*In re Essar Steel Minnesota LLC*, No. 16-11626 (CTG), 2025 WL 559278 (Bankr. D. Del. Feb. 19, 2025)..........................................................................................14, 15

*In re Green Field Energy Services, Inc.*, 554 B.R. 315 (Bankr. D. Del. 2016) .............................7

*In re HRB Winddown, Inc.*, 2023 WL 3294623 (Bankr. D. Del. May 5, 2023) ...........................10

*In re KB Toys, Inc.*, 470 B.R. 331 (Bankr. D. Del. 2012)..............................................................9

*In re LaRoche Indus., Inc.*, 312 B.R. 249 (Bankr. D. Del. 2004) ..........................................14, 15

*In re Maxus Energy Corp.*, 597 B.R. 235 (Bankr. D. Del. 2019) ...........................................17, 18

*In re MPC Computers, LLC*, 465 B.R. 384 (Bankr. D. Del. 2012) .............................4, 5, 6, 7, 14

*In re Ross,* 602 F.2d 604 (3d Cir.1979) .......................................................................................11

*In re Tougher Indus., Inc.*, No. 06-12960-1-REL, 2009 WL 2872842 (Bankr. N.D.N.Y. Feb. 17, 2009)........................................................................................15

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (overruled on other grounds) .......................5

*Volvo Trucks N. Am. Inc. v. Crescent Ford Truck Sales Inc.*, 273 F. App'x 368
(5th Cir. 2008) ..................................................................................................7, 8

*Yangaroo Inc. v. Digital Media Servs., Inc.*, No. N23C-06-090, 2024 WL
2791100 (Del. Super. Ct. May 30, 2024) ...............................................................12

## RULES

*Federal Rule of Procedure 12(b)(1) and 12(b)(6)* .........................................................1

## MISCELLANEOUS

*Restatement (Second) Judgments* § 27 (1982) .............................................................11

iii

10071027

Dundon Advisers LLC c/o Joshua Nahas and Joshua Nahas, strictly in his capacity as Liquidating Trustee (the "Plaintiff" or "Liquidating Trustee") of the Liquidating Trust (the "Liquidating Trust"), established by the *Debtors' Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Uphealth Holdings, Inc. and its Affiliated Debtors* [ECF No. 1506][2] (the "Plan"),[3] confirmed by an order of the United States Bankruptcy Court for the District of Delaware entered on September 11, 2025 [ECF No. 1553] in the above-captioned chapter 11 bankruptcy cases of the above-captioned post-effective date debtors (the "Debtors"), by and through undersigned counsel, files this omnibus supplemental opposition (the "Supplemental Opposition") to the supplemental briefs (the "Supplemental Briefing") filed by certain Defendants in further support of their respective Motions to Dismiss the remaining claims in the Second Amended Complaint.[4]   For the reasons state below, the Court should deny the Motions.

## PRELIMINARY STATEMENT

The Motions to Dismiss rely on a series of red herrings that do not withstand scrutiny. Despite suggestions to the contrary, this Court maintains subject matter jurisdiction over the

---

[2] Unless otherwise indicated. "Docket No. __" refer to documents filed in the Debtors' jointly administered docket in Case No. 23-11476 (LSS).

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the First Opposition or the Plan, as applicable.

[4] This Supplemental Opposition is in response to *Defendant Martin Beck's Supplemental Brief in Further Support of Motion to Dismiss the Second Amended Complaint* [Adv. Docket No. 270] ("Beck Mot. To Dismiss"); *Supplemental Brief in Further Support of Defendant Dr. Chirinjeev Kathuria's Motion Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to Dismiss the Second Amended Complaint* [Docket No. 271] ("Kathuria Mot. To Dismiss"), and *Dr. Mariya Pylpiv's Joinder of the Supplemental Brief in Further Support of Defendant Dr. Chirinjeev Kathuria' Motion Pursuant to Federal Rule of Procedure 12(b)(1) and 12(b)(6) to Dismiss the Second Amended Complaint* [Docket No. 272] (the "Pylpiv Joinder"), collectively, and with the prior motions to dismiss filed in this case (the "Motions to Dismiss").

For the avoidance of doubt, the Liquidating Trust adopts and preserves all of the arguments in the *Plaintiffs Glocal Healthcare Systems Private Limited, Dr. Syed Sabahat Azim, Ms. Richa Sana Azim, Mr. Guatam Chowdhury, and Kimberlite Social Infra Private Limited's Omnibus Brief in Opposition to Defendants' Motions to Dismiss* [Docket No. 139] (the "First Opposition") as they pertain to the Contributed Claims (as defined herein).

1

Contributed Claims because, *inter alia*, this adversary proceeding was commenced during the pendency of the bankruptcy proceedings, was contemplated by and expressly addressed in the confirmed bankruptcy Plan and recoveries on these claims will inure to the benefit of creditors. Equally unavailing is Defendants' attempt to invoke judicial estoppel. The Liquidating Trust is not stepping into the shoes of the Debtors, but rather asserts claims assigned by the Plaintiffs. The Defendants' effort to conflate the Debtors with the Plaintiffs is deliberately misleading and does not bar the Trust from pursuing the Contributed Claims.

The Defendants' reliance on the *Edwards* decision, a case involving different parties, different claims, different facts, different issues, and a different procedural posture, has no precedential value with respect to the remaining claims set forth in the Second Amended Complaint and does not support dismissal of any of those claims for all of the reasons set forth below. Finally, abstention is unwarranted. The applicable factors weigh decisively against abstention, as the claims are straightforward and the resolution of the claims could substantially impact creditor recoveries. Accordingly, the Defendants cannot overcome the presumption in favor of this Court exercising jurisdiction and the request for abstention should be rejected.

For these reasons, and as further set forth below, Defendants' Motions to Dismiss should be denied in their entirety.

## SUPPLEMENTAL BACKGROUND

1.      On September 11, 2025, the Court entered an order [Docket No. 1552] (the "9019 Order") approving the Debtors' entry into a settlement with the Glocal Parties[5] [Docket No. 1552, Exhibit 1] (the "Settlement"), the terms of which were incorporated into the Plan and

---

[5] The "Glocal Parties" are Glocal Healthcare Systems Private Limited, Dr. Syed Sabahat Azim, Ms. Richa Sana Azim, Mr. Gautam Chowdhury, and Kimberlite Social Infra Private Limited.

10071027

Confirmation Order.  As part of the Settlement, the Glocal Parties agreed to contribute and assign to UHH's estate or the Liquidating Trust  . . . "their claims asserted in the Adversary Proceeding, which shall then be dismissed as to the Released Directors and Officers (as defined in the Amended Plan and Further Amended Plan" (the "Contributed Claims"), in addition to other consideration.  Settlement § 7.  It further provides that the "Liquidating Trust waterfall shall provide for distributions of net litigation proceeds recovered on account of the Contributed Claims on a pro rata basis to all trust beneficiaries, including the Glocal Parties pursuant to the Glocal GUC Claim."  *Id.*  In exchange for the consideration provided in the Settlement, including the Contributed Claims, the Glocal Parties and the Debtors agreed to a mutual release of claims against the Debtors and certain officers and directors.  Settlement § 5.

2.      As a result of the Settlement, several of the claims in this Adversary Proceeding are now resolved, and several of the remaining claims were released by the Glocal Parties as against certain defendants.  The remaining and pending Contributed Claims in this matter are Count I (Breach of Fiduciary Duty), Count VII (Fraudulent Inducement and Negligent Misrepresentation), and Count XI (Unjust Enrichment), each as against certain of the Non-Released Debtor Parties.

3.      The Contributed Claims were listed as Retained Actions on Exhibit D-1 of the Debtors' plan supplement [Docket No. 1543] (the "Plan Supplement").  Pursuant to the Plan, on the Effective Date, all Retained Actions vested in the Liquidating Trust.  *See* Plan, at § 7.11 (Preservation of Rights of Action), including the Contributed Claims assigned by Plaintiffs to the Liquidating Trust.

4.      On September 11, 2025, the Court entered the *Findings of Fact, Conclusions of Law, and Order Approving the Modified Second Amended Combined Disclosure Statement and*

3

*Joint Chapter 11 Plan of UpHealth Holdings, Inc. and its Affiliated Debtors* [ECF No. 1553] (the

"Confirmation Order") which granted the Liquidating Trust authority to (a) wind down the

Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets

held by the Trust after the Effective Date, (b) resolve any Disputed Claims, (d) pay or otherwise

satisfy Allowed Claims, (e) file appropriate tax returns, (f) investigate, prosecute, settle or resolve

all Retained Actions, and (g) administer the Plan in an efficacious manner.

5.      Specifically, pursuant to the Liquidating Trust Agreement [Docket No. 1543,

Exhibit A-1], the Liquidating Trust was granted standing to pursue all claims and Causes of

Action assigned or contributed to it under the Plan:

> The Trust shall have the sole responsibility, standing (including derivative standing), and authority to investigate, commence, prosecute and settle all Retained Actions. Any and all Retained Actions that are not expressly released or waived under the Plan are reserved and preserved and vest in the Trust in accordance with the Plan. No person may rely on the absence of a specific reference in the Plan or this Agreement or any other Plan Supplements to any Retained Actions against it as any indication that the Trustee will not investigate and/or pursue any and all available Retained Actions against such Person. ***Further, the Trustee shall have all such standing, rights, powers and entitlements with respect to all claims and Causes of Action assigned or contributed to the Trust under the Plan or otherwise***.

Liquidating Trust Agreement § 2.7 (emphasis added).

## ARGUMENT

## I.      The Bankruptcy Court Has Subject Matter Jurisdiction Over This Proceeding.

6.      The Bankruptcy Court maintains subject matter jurisdiction over the instant action

which was pending prior to confirmation of the Plan and includes the Contributed Claims

specifically identified in and contemplated by the Plan.  Where a pending action is expressly

contemplated by a bankruptcy plan, the Third Circuit has found bankruptcy courts maintain

"related to" jurisdiction over the actions post-confirmation.  *See e.g., In re MPC Computers, LLC,*

4

465 B.R. 384 (Bankr. D. Del. 2012) (holding that a bankruptcy court maintains "related to" jurisdiction over actions filed prior to plan confirmation where plan documents specifically contemplate pursuit of those actions). Bankruptcy courts have jurisdiction over litigation within a bankruptcy court's "related to" jurisdiction, regardless of whether they are considered "core" proceedings under the Bankruptcy Code. *Id.*; *see also Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) (overruled on other grounds) (holding that non-core proceedings are within a bankruptcy court's "related to" jurisdiction where the outcome of that proceeding could **conceivably have any effect** on the estate being administered in bankruptcy) (emphasis added).

7.      In *MPC Computers*, a liquidating trustee pursued state-law claims that had been initiated by the debtors while the bankruptcy was pending and transferred to a trust upon the plan's confirmation. *MPC Computers*, 465 B.R. at 386-387. As here, the defendants argued that the liquidating trustee's pursuit of such claims did not have a sufficiently close nexus to the bankruptcy estate and that the bankruptcy court lacked jurisdiction over the proceedings. *Id.* In order to determine whether the liquidating trustee's pursuit of the state-law claims satisfied the *Pacor* test, the Court looked to the plan and its supporting documents to determine whether the documents contemplated the trustee's pursuit of the claims at issue. *Id.*

8.      In concluding that the relevant documents "clearly contemplated" the proceedings at issue, the Court in *MPC Computers* found the language in the plan documents to be clear evidence of intent to allow the trustee's pursuit of the claims. *Id.* at 392-93 (noting in particular provisions in the "Means for Implementation of the Plan" that provided that the Liquidating Trust would be formed "to administer certain post-confirmation responsibilities under the Plan, including . . .those responsibilities associated with the pursuit and collection of Litigation Claims, Causes of Action, and the reconciliation and payment of Claims" and language providing the

5

trust with authority to pursue claims for the benefit of the debtors). The Court also found that the confirmation order provided that the bankruptcy court expressly maintained jurisdiction over matters relating to the cases or the plan. *Id.* (noting that even if the "close nexus" test were to apply, such language would be sufficient for the bankruptcy court to retain jurisdiction) (*citing In re AstroPower Liquidating Trust*, 335 B.R. 309, 325 (Bankr. D. Del. 2005) ("where . . . the Plan specifically describes an action over which the court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation")).

9.       Here, the Plan contemplates the Liquidating Trustee's pursuit of the Contributed Claims by identifying that any proceeds recovered from the pursuit of the Contributed Claims would be a source of recovery for distribution to creditors. Plan § 7.2;[6] *see also* Plan Supplement, Exhibit D-1 (providing that "[a]ll Contributed Claims (as defined in the Glocal Settlement), which shall be treated in accordance with the terms of the Glocal Settlement" shall be Retained Actions); Settlement § 7 (providing that the Litigation Trust waterfall will provide for distributions of the net litigation proceeds recovered on account of the Contributed Claims). The Liquidating Trustee has authority to "liquidate all Liquidating Trust Assets" and "to investigate . .. prosecute and/or settle any Retained Action," among other things. Plan § 7.6(b). Moreover, recoveries for general unsecured creditors is dependent on the receipt of proceeds of the various Retained Actions. *See e.g.,* Liquidation Analysis, Plan Supplement, Exhibit C. Accordingly, the liquidation of the Contributed Claims directly inures to the benefit of creditors under the terms of the Plan and may

---

[6] Plan § 7.2 provides that "[t]he Debtors will fund distributions under the Plan with…proceeds from the resolution of the Glocal Actions…and any Causes of Action not settled, released, enjoined, or exculpated under Article VIII hereof on or prior to the Effective Date shall vest in the Liquidating Trust and shall be subject to administration by the Liquidating Trustee."

substantially impact potential recoveries. The Plan language also mirrors the similar language in *MPC* that the Court found to have satisfied the "close nexus" analysis.

10.     In the Supplemental Briefs, movants assert that this Court lacks subject matter jurisdiction by relying on *In re Green Field Energy Services, Inc.*, 554 B.R. 315, 319-20 (Bankr. D. Del. 2016) and *Volvo Trucks N. Am. Inc. v. Crescent Ford Truck Sales Inc.*, 273 F. App'x 368, 370 (5th Cir. 2008). However, both of those cases are easily distinguishable and actually support that the Court has subject matter jurisdiction under the facts presented here.

11.     In *Green Field Energy*, the Court found that it lacked subject matter jurisdiction over a third-party complaint defendants sought to file against a non-debtor because the trustee who commenced the adversary proceeding against the defendants "was not associated with" the proposed third-party complaint, and the proposed third-party complaint did "not have a close nexus to the plan or the pending adversary proceeding." *Green Field Energy*, 554 B.R. at 320. The Court based its ruling by applying the Third Circuit's definition of "close nexus" as being "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.* (*quoting Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 167 (3d Cir. 2004)). Because the claims that were to be asserted in the proposed third-party complaint were not mentioned or part of the confirmed bankruptcy plan and would have no conceivable impact on creditor recoveries, the *Green Field Energy* Court determined that it lacked subject matter jurisdiction. *Id.* at 320.

12.     In reaching that conclusion, the Court in *Green Field Energy* distinguished the *AstroPower Liquidating Trust* case where the Court found it had "related to" subject matter jurisdiction over non-core claims because, as here, the bankruptcy plan specifically described the action at issue and the claims were being liquidated for the benefit of creditors. *Green Field*

7

*Energy*, 554 B.R. at 321 (*citing AstroPower Liquidating Trust v. Xantrex Tech., Inc.,* 335 B.R. 309 (Bankr. D. Del. 2005)).

13.     Similarly, the *Volvo Trucks* case also fails to support the Motions to Dismiss as it also involved a defendant bringing a third-party action against a non-debtor that the court found would not conceivably have any effect on the administration of the bankruptcy estate.  273 F. App'x at 370.  Unlike here, the claims asserted in the third-party complaint were not set forth in the bankruptcy plan, and no recovery would inure to the benefit of creditors.

14.     As explained above, resolution of  Retained Actions, including the Contributed Claims, was clearly contemplated by and expressly addressed in the Plan and its supporting documents, and the recovery on these claims will directly impact creditor recoveries and consequently, impact this estate.  Accordingly, the Court maintains subject matter jurisdiction over the Contributed Claims under applicable law and the explicit language of the Plan, and all subject matter jurisdictional arguments set forth in Motions to Dismiss should be rejected.

**II.     The Liquidating Trustee is Not Estopped From Prosecuting Claims.**

15.     Defendants' contention that the Trust is "stepping into the shoes of Debtor UHH, who had previously filed a motion seeking to dismiss the Glocal Parties' claims and cannot now take a different view" (Beck Mot. to Dismiss, p. 5; see also Kathuria Mot. to Dismiss, ¶¶9–10) is a red herring and deliberately misleading.  The Debtors are not the assignors of the Contributed Claims, and the Liquidating Trustee was not assigned the Debtors' claims in this proceeding. The Trust asserts claims assigned by the Plaintiffs, not the Debtors, and Defendants' attempt to conflate the two lacks factual or legal support.

16.     As set forth in the Settlement, as well as the Plan, the Contributed Claims were assigned by the Glocal Parties to the Liquidating Trust, the pending claims are not claims that

were held by the Debtors.  The Settlement provides that the "Glocal Respondents will contribute certain claims and causes of action to the Liquidating Trust to be established under this Combined Disclosure Statement and Plan."  Plan § 7.14.  This contribution was effectuated upon the effective date of the Plan. *See* Settlement § 7 ("Upon the occurrence of the Plan Effective Date . . . the Glocal Parties shall irrevocably contribute and assign to UHH's estate or the Liquidating Trust (or, upon conversion to chapter 7, to the chapter 7 trustee) (a) their claims asserted in the Adversary Proceeding.").

17.     In support of their argument that the Liquidating Trustee is judicially estopped from pursuing the claims here, movants cite to the general proposition that an assignee stands in the shoes of the assignor.  *See e.g., In re KB Toys, Inc.*, 470 B.R. 331, 337 (Bankr. D. Del. 2012) ("An assignee stands in the shoes of the assignor and subject to all equities against the assignor.") (collecting cases); *1228 Inv. Grp., L.P. v. Hub Grp., Inc.*, 635 F. Supp. 3d 381, 388 (E.D. Pa. 2022).    However, the *KB Toys* Court stated that general legal concept in the context of determining that a trade claims purchaser holds a claim subject to the same rights and disabilities as the original trade claimant.  *Id.* at 343.  Similarly, *1228 Inv. Grp.* is a nonbankruptcy case holding that under Pennsylvania law, an assignee of breach of contract claims has standing only when the assignor had a viable claim to assert.  635 F. Supp 3d at 388.  Neither of these cases were in the context of a confirmed bankruptcy plan where third-party claims are contributed to a trust.

18.     Indeed, the Defendants cite to no authority to support their argument that a non-debtor party's claims that are assigned to a trust for the benefit of creditors are tainted by the prior positions of a defendant/debtor.  Here, the assignor was the Glocal Parties, not the Debtors.  Thus, the Liquidating Trustee is stepping into the shoes of the Glocal Parties in this proceeding, not the

10071027

Debtors, and is therefore not judicially estopped by the Debtors' prior positions and statements, which are irrelevant for purposes of the Liquidating Trustee asserting the Glocal Parties' claims against the remaining Defendants.

19.    Furthermore, the Liquidating Trust is a separate legal entity from the Debtors.  The Plan documents provide that the Liquidating Trust is a "separate legal entity except where applicable law in any jurisdiction in which the Trust property may be located requires title to any part of the Assets to be vested in a trustee, in which case title shall be deemed vested in the Trustee."  Liquidating Trust Agreement § 2.4.  Courts also regularly recognize liquidating trusts as separate legal entities from the debtor.  *See In re HRB Winddown, Inc*., 2023 WL 3294623, at *6 (Bankr. D. Del. May 5, 2023) ("[A] liquidating trustee may succeed the debtor in certain respects but typically does not *become* it.") (emphasis in original).  In a case analyzing whether an attorney-client relationship with a debtor extended to the liquidating trust, a court found that the liquidating trustee is the "post-confirmation designated representative of the estate, making it a separate and distinct entity from the [debtors]."  *In re Abengoa Bioenergy Biomass of Kansas, LLC*, 2018 WL 1321951, at *7 (Bankr. D. Kan. Mar. 13, 2018).

20.    Accordingly, both the language in the Plan and case law affirm that the Liquidating Trust functions as an independent legal entity, distinct from the Debtors, with authority to pursue claims solely for the benefit of creditors in its independent legal capacity.  Because the Liquidating Trustee is a distinct post-confirmation representative pursuing claims contributed and assigned by third parties—not by the Debtors—the Trustee is not judicially estopped from advancing positions independent of those previously taken by the Debtors.  As such, the arguments relating to judicial estoppel set forth in the Motions to Dismiss should be rejected.

10071027

**III.     The Edwards Decision Does Not Support Dismissal Of The Pending Unjust Enrichment Claims.**

21.     The Beck Mot. to Dismiss argues that the ruling in *Edwards v. GigAcquisitions2, LLC,* 2025 WL 2092832 (Del. Ch. July 25, 2025) supports dismissal of the unjust enrichment claims asserted here, but fails to cite a legal basis to support that argument.  *See* Beck Mot. To Dismiss, pp. 6-8.

22.     As stated by the Third Circuit, "[f]or a party to be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."  *In re Decteroff*, 133 F.3d 210, 214 (3d Cir. 1997) *citing* [In re Ross, 602 F.2d 604, 608 (3d Cir.1979)](); [Restatement (Second) Judgments § 27 (1982)]().

23.     Stated simply, the parties, facts, issues and claims set forth in the *Edwards* are all different from the parties, facts, issues and claims asserted in the case *sub judice*, and *Edwards* utterly fails to support dismissal of any claims asserted here.  *Edwards* was litigation instituted by former members and option holders of a company called Cloudbreak Health, LLC (the "Cloudbreak Investors") against certain (but not all) of the Defendants here.  Importantly, the Glocal Parties **were not** parties in the *Edwards* litigation, and the  Glocal Parties claims, which related to entirely discreet transactions and facts, were not addressed, much less ruled upon in *Edwards*.

24.     More specifically, in *Edwards*, the unjust enrichment claims were brought by the Cloudbreak Investors against Dr. Avi Katz and GigAcquisitions2, LLC.  The *Edwards* court found, based on the facts presented, that the Cloudbreak Investors failed to state a claim for unjust

11

enrichment because they "were not associated with" the defendants. *Id.* at *21-22. Conversely, the unjust enrichment claims set forth in the Second Amended Complaint are based on specific facts alleged to have harmed Dr. Sayed Sabahat Azhim due to the actions of the Debtors (now settled) and the remaining director Defendants in connection with the acquisition Glocal Healthcare Systems Private Limited ("Glocal").

25.     Accordingly, the *Edwards* decision lacks any precedential value and is irrelevant to the claims asserted here, much less supports their dismissal. However, even if *Edwards* was somehow relevant, the Second Amended Complaint adequately pled facts to support the unjust enrichment claims included therein.

26.     As set forth in the First Opposition, all that is required is to plead a basic relationship between plaintiffs' impoverishment and defendants' enrichment. *Yangaroo Inc. v. Digital Media Servs., Inc.*, No. N23C-06-090, 2024 WL 2791100, at *13 (Del. Super. Ct. May 30, 2024) (holding that a simple relationship between the defendant's enrichment and the plaintiff's impoverishment is enough where the defendant facilitated prohibited activities). The Second Amended Complaint sets forth sufficient facts to meet this standard. For example, the Second Amended Complaint alleges that the Defendants diverted resources that were otherwise promised to be paid to Dr. Azim for their own benefit in the form of overly-generous exit packages, influence and control over UHI's board and c-suite, and for other purposes as they saw fit. *See e.g,* Second Amended Complaint, at ¶¶ 92-95; 101-106; 207; 219-22. On a broader level, Plaintiffs allege in the Second Amended Complaint that all of the damages asserted by Plaintiffs arose "from Defendants' wrongful, neglect, deceptive, and fraudulent conducing in luring Plaintiffs into transactions whereby Defendants attempted to swindle Plaintiffs out of their thriving company, Glocal, and caused at least $200 million in damages to Plaintiffs." *Id.* ¶ 2.

12

Thus, Mr. Beck's assertion that "there is no allegation that Dr. Azim or any plaintiff performed any activity that benefited Defendants" rings hollow, as the entire sale of Glocal, made under alleged false promises and misrepresentations was clearly an "activity" that Plaintiffs adequately allege led to the Defendants' unjust enrichment. *See* Beck Motion to Dismiss at p.7  Finally, the fact that Mr. Beck was not a party to a contract demonstrates the independence of the Plaintiffs' unjust enrichment claims against him as he was not named as a defendant to the breach of contract claim that has been settled.  In short, the *Edwards* decision is not relevant and does not support dismissal of the unjust enrichment claims.

**IV.    The Court Should Decline to Abstain.**

27.    The Kathuria Mot. to Dismiss argues that the Court should exercise its discretion to abstain from this proceeding, however, the Defendants cannot overcome the presumption in favor of maintaining jurisdiction.

28.    A party requesting a court to abstain carries a heavy burden to overcome the presumption in favor of maintaining federal jurisdiction.  "Federal courts should proceed carefully before permissively abstaining because they have a "virtually unflagging obligation . . . to exercise the jurisdiction given them and may abstain only for a few extraordinary and narrow exception[s]." *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 513 (S.D.N.Y. 2015) (citations omitted); *see also CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) ("Courts must be sparing in their exercise of permissive abstention and may abstain only for a few extraordinary and narrow exceptions.").  Given that "federal courts have an obligation to exercise the jurisdiction properly given to them, there is a

presumption in favor of the exercise of federal jurisdiction and against abstention." *In re Eight-115 Assocs., LLC*, 650 B.R. 43, 51 (Bankr. S.D.N.Y. 2023) (citations omitted).

A.      **The State Law Claims Here Do Not Favor Abstention**

29.      That there are only state law claims does not weigh in favor of abstention.  First, the claims are not idiosyncratic such that it would require a state court's expertise.  *See Winstar*, 2007 WL 4323003, at *5 (no abstention because "[a]lthough plaintiffs' claims are based on state law, the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of [state] law.").  The same is true here, and bankruptcy courts routinely rule on claims that have their bases in state law.  Indeed, the claims at issue in the *MPC Computers* case discussed above were state law claims being pursued by a liquidating trustee.  *MPC Computers*, 465 B.R. at 386-387.  As explained above the Court exercised its jurisdiction over such claims.

B.      **Creditor Recoveries Are Substantially Tied To The Claims Asserted Here**

30.      Second, this proceeding could have a substantial impact on estate recoveries despite the movants' unsupported argument that this action has "*de minimis*" effect on estate administration.  In support of this baseless position, the movants cite to several cases involving plans of *reorganization*, not liquidation.  For example, in *In re Essar*, the court found that a proceeding had a *de minimis* impact on the estate, yet that case involved a plan of reorganization, was primarily a property dispute over mining rights, and **the outcome would not have any effect on recoveries for creditors**.  *In re Essar Steel Minnesota LLC*, No. 16-11626 (CTG), 2025 WL 559278, at *6 (Bankr. D. Del. Feb. 19, 2025) (emphasis added).

31.      Similarly, movants cite to *In re LaRoche Indus., Inc.*, 312 B.R. 249, 254 (Bankr. D. Del. 2004).  But that case was a post-confirmation "contract dispute involving a former

14

(reorganized) debtor and a non-debtor." *Id.* Importantly, in that case, the Court acknowledged that the "Debtor's bankruptcy case was closed over a year ago; the Plan has been confirmed and fully consummated. **The action will, therefore, have no effect on creditors or their recovery in this case**." *Id.* (emphasis added). *In re LaRoche* does not support abstention here.

32.     Similarly, *In re Tougher Indus., Inc*., No. 06-12960-1-REL, 2009 WL 2872842 (Bankr. N.D.N.Y. Feb. 17, 2009) does not support abstention. In *Tougher Indus*, the Court expressly found that "the adjudication of this litigation in state court **will have no effect on the effective administration of the bankruptcy estate** because the ongoing business of Tougher has been sold, and the estate is completing the marshalling of its remaining assets by collecting on pre-petition accounts receivable …. [and] while disposition of this matter may have a significant impact on the amount of money available for the creditors, its affect on the proceedings in the main bankruptcy case will be remote." *Id.* at *5.

33.     In opting to abstain, most significant to the *Tougher Indus.* Court was the fact that "this matter involves not only a debtor's claim against a third party to the bankruptcy proceeding, but also that third party's related claim against another third party" and the non-debtor related claims were "intimately related" such that refusing to abstain "would result in duplicative litigation." *Id.* Here, the Plaintiffs' claims now being pursued by the Liquidating Trustee are not "intimately related" to any other pending action, including *Edwards*, and as such there is no risk of "duplicative litigation" like there was in *Tougher Indus.*

34.     In a reorganization context, post confirmation proceedings are typically not like post confirmation proceedings in liquidation cases.  Unlike the debtors in *Essar* and *LaRoche*, this is a liquidation case and the resolution of the Contributed Claims in this case directly affects creditor recoveries in a way that makes the Defendants' reliance on the reorganization precedents

misplaced.  Here, the Liquidating Trustee is charged with substantial tasks in order to wind-down and administer the Debtors' estates, not the least of which is liquidating trust assets for the benefit of estate creditors, including the Contributed Claims.  There are distributions to secured creditors to be made (*see* Liquidating Trust Waterfall, Plan Supplement, <u>Exhibit B</u>), and recoveries for general unsecured creditors are largely dependent on receipt of proceeds from the Retained Actions (*see* Liquidation Analysis).  As such, the instant litigation that was integral to confirming the Plan bears directly on the administration of the Debtors' Estates and available recoveries for creditors.  Accordingly, all of these facts weigh in favor of this Court maintaining jurisdiction.

### C.    There Is No "Related Proceeding" Pending In State Court

35.    The movants further argue that a "related proceeding" is pending in state court by pointing to the currently dismissed *Edwards* case, yet they acknowledge that the *Edwards* litigation involves different parties, different claims and different issues. Kathuria Mot. To Dismiss, at ¶19 ("Although the action does not address identical parties, claims and issues as raised by the Second Amended Complaint, it does involve many of the same transactions."). Courts routinely decline to abstain where the parties and issues in the pending state court action differ from the adversary proceeding and the related action could not resolve of the issues in the adversary.  *See In re Eight-115 Assocs., LLC*, 650 B.R. 43, 52 (Bankr. S.D.N.Y. 2023) (denying a request for abstention where "the parties and issues in the pending state court action differ from the parties and issues in this adversary proceeding. Thus, the state court action cannot fully resolve all of the issues in this case.")  The *Edwards* matter is distinguishable on several grounds, does not hold precedential weight over the claims here, and importantly, the claims at issue in *Edwards* did not and will not resolve the claims here involving different parties, different transactions and different facts.  As such, it is incorrect to assert that a ruling here could result in

16

"conflicting results on critical state law issues." Kathuria Mot To Dismiss, at ¶19, n. 14. Additionally, as admitted by the movants, the *Edwards* case has already been dismissed and is the subject of a pending appeal. *Id.*

> **D.    The Subject Matter Jurisdiction Analysis Supports Not Abstaining Here**

36.    Further, the Court should decline to abstain for the same reasons set forth above demonstrating that the Court has subject matter jurisdiction. In reviewing whether to exercise permissive abstention, *In re Maxus Energy Corp.*, 597 B.R. 235, 248 (Bankr. D. Del. 2019) is illustrative as to why this Court should reject the request that it abstain here. There, the Court employed the "close nexus" test in analyzing an abstention request, and noted that "trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." The *Maxus Energy* Court further noted that it involved claims that were "contemplated during the bankruptcy" and that the matter could "determine the population of nearly the entire res." *Id.* at 249. The Court found that its role in overseeing disbursements weighed in favor of declining abstention because the "exercise of jurisdiction would expedite the determination of the res. This would conclude the bankruptcy more quickly and guard against indefinite jurisdiction." *Id.*

37.    Here, this litigation was not only commenced during the pending of the bankruptcy, but as set forth above, the Plan documents clearly contemplated the Contributed Claims as an estate asset. Moreover, the proceeds from the Contributed Claims could be determinative as to whether general unsecured creditors receive *any* recoveries. *See* Liquidation Analysis. General unsecured recoveries are dependent on receipts of proceeds of the various Retained Action and distributions from the Liquidating Trust. *Id.* Further, retaining jurisdiction

is the most efficient means to adjudicating the Contributed Claims and realizing recoveries for creditors.

38.     Accordingly, the presumption in favor of federal jurisdiction, the straightforward nature of the state law claims at issue, the substantial impact on creditor recoveries, and the lack of overlap with the currently dismissed *Edwards* case all weigh decisively against abstention. This Court exercising its jurisdiction and declining the abstention request will be the most efficient and equitable path to maximizing recoveries for creditors. The Motions to Dismiss based on abstention grounds should therefore be rejected.

## **CONCLUSION**

For the reasons stated herein, the Liquidating Trust respectfully requests that the Court deny the Motions to Dismiss.

Date: November 25, 2025              **PORZIO, BROMBERG & NEWMAN, P.C.**

*/s/ Cheryl A. Santaniello*
Cheryl A. Santaniello (DE Bar No. 5062)
300 Delaware Avenue, Suite 1220
Wilmington, Delaware 19801
Telephone: (302) 526-1235
Facsimile: (302) 416-6064
CASantaniello@pbnlaw.com

Brett S. Moore (admitted *pro hac vice*)
Kimberly N. Pageau (admitted *pro hac vice*)
1675 Broadway, Suite 1810
New York, NY 10019
Telephone: (212) 265-6888
Facsimile: (212) 967-3983

BSMoore@pbnlaw.com
KNPageau@pblaw.com

*Counsel to the Liquidating Trustee for the Liquidating Trust of UpHealth Holdings Inc, et al.*

10071027